Dr. Leonard RUBIN, Cheltenham Township Emergency Medical Services Medical Director and Cheltenham Township Emergency Medical Service, Petitioners

v.

Jeremy FOX, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2012.
Decided Nov. 19, 2012.

180

Michael J. Clement, Blue Bell, for petitioner Dr. Leonard Rubin.

David R. Dearden and Karilynn Bayus, Wayne, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and COVEY, Judge.

OPINION BY Judge BROBSON.

Petitioners Dr. Leonard Rubin (Dr. Rubin), in his capacity as Cheltenham Township Emergency Medical Services Medical Director, and Cheltenham Township Emergency Medical Service (CTEMS) (hereafter Petitioners) seek review of an order of the Department of Health (Department). The Department overturned a decision to withdraw Respondent Jeremy Fox's (Fox) medical command authorization (MCA) and rendered the subsequent restriction of Fox's MCA null and void.[1] The Department also ordered all references to the withdrawal and restriction to be removed from Fox's emergency medical service (EMS) records and directed that Fox would not have to

report the withdrawal or restriction on any future MCA forms or to any future EMS agency or agency medical director. For the reasons set forth below, we affirm the order of the Department.

At the outset, we note that Section 1003.28 of Title 28 of the regulations outlines both the process by which a decision regarding an EMT-paramedic's (paramedic) MCA is made and the procedure used to appeal a denial of a paramedic's MCA. First, an advanced life support (ALS) medical service director determines whether "to grant, deny, or restrict … [MCA] to a[ ] [ ]paramedic … who seeks to provide EMS on behalf of the ALS ambulance service." 28 Pa.Code § 1003.28(a)-(b). In making this determination, the ALS service medical director is required to "document the [MCA] decision and how that decision was made," and "[t]he decision … shall affect the [MCA] status of the [ ]paramedic … for that ALS ambulance service only." *Id.* § 1003.28(a). Further-

---

1. The Emergency Medical Services System Act (Act) governs emergency medical services in Pennsylvania. 35 Pa.C.S. §§ 8101–8157. It replaces the Emergency Medical Services Act (EMS Act), Act of July 3, 1985, P.L. 164, *as amended, formerly* 35 P.S. §§ 6921–6938, repealed by the Act of August 18, 2009, P.L. 308. The Act names the Department as "the lead agency for EMS in this Commonwealth" and authorizes the Department, *inter alia*, to "[p]romulgate regulations to establish standards and criteria for EMS systems" throughout the Commonwealth. 35 Pa.C.S. § 8105(b)(11). The regulations promulgated under the EMS Act, which are at 28 Pa.Code §§ 1001.1–1015.2, remain in full force and effect until new regulations are promulgated under the Act.

Section 1003.24 of the regulations provides that an individual must obtain MCA in order to be an EMT-paramedic. 28 Pa.Code § 1003.24. The regulations define MCA as follows:

> Permission given by the ALS service medical director[ ] … to an EMT-paramedic … to perform, on behalf of an ALS ambulance

service, ALS services under medical command or in accordance with Department approved regional EMS council transfer and medical treatment protocols when medical command cannot be secured, is disrupted or is not required under the approved regional EMS council transfer and medical treatment protocols.

*Id.* § 1001.2

The regulations define an "ALS service medical director," in part, as a physician qualified under the regulations "to make [MCA] decisions, provide medical guidance and advice to the ALS ambulance service, and evaluate the quality of patient care provided by the prehospital personnel utilized by the ALS ambulance service." *Id.* An "ALS ambulance service" is defined as "[a]n entity licensed by the Department to provide ALS services by ambulance to seriously ill or injured patients. The term includes mobile ALS ambulance services that may or may not transport patients." *Id.* For further clarification, "ALS" is the abbreviation for "advanced life support."

more, the regulation provides that when an ALS service medical director denies or restricts an individual's MCA, the ALS service medical director must do so "in a written document provided to the individual." *Id.* § 1003.28(b)(4).

Once MCA is initially granted, the ALS service medical director must review a paramedic's MCA at least annually. *Id.* § 1003.28(c). In conducting this review, the ALS service medical director must ensure, in part, that the paramedic "has demonstrated competence, as verified by the ALS service medical director, in performing each of the services that fall within the scope of the individual's [MCA]." *Id.* Once the ALS service medical director has reviewed the paramedic's MCA, he may (1) renew the paramedic's MCA, (2) renew the paramedic's MCA "and require continuing education courses in any field the ALS service medical director deems appropri-

ate," [2] (3) restrict the paramedic's MCA,[3] or (4) withdraw the paramedic's MCA. *Id.*

A paramedic who chooses to appeal a denial of his MCA must submit his appeal to the regional EMS medical director [4] within 14 days of the decision. *Id.* § 1003.28(d). After a hearing, the regional EMS medical director will render his own "written decision affirming, reversing or modifying the ALS service medical director's decision." [5] *Id.* A party that disagrees with the regional EMS medical director's decision has "the right of immediate appeal to the Department." *Id.* § 1003.28(e). In addressing the appeal, "[t]he Department will review the record before the regional EMS medical director, and if deemed advisable by the Department will hear argument and additional evidence." *Id.* The Department will then "issue a final decision containing findings of fact and conclusions of law which affirms, reverses or modifies

2. When the ALS service medical director chooses to renew the paramedic's MCA and require continuing education courses, "[t]he ALS service medical director may require an individual to secure more continuing education credit than generally required for personnel operating under [MCA] for the ALS ambulance service, only if the ALS service medical director determines that [certain] conditions are satisfied." 28 Pa.Code § 1003.28(c)(2). The conditions are as follows:

(i) The individual does not demonstrate sufficient competence in performing a service.
(ii) The continuing education is prescribed to address that deficiency.
(iii) The number of continuing education hours generally required are not sufficient to provide the education the individual needs to remedy the problem.
*Id.*

3. If the ALS service medical director determines that a paramedic's MCA should be restricted, the restriction must "not preclude the individual from performing the services specified within the scope of the individual's certification or recognition as permitted by the medical treatment protocols for the re-

gion." 28 Pa.Code § 1003.28(c)(3). Acceptable restrictions include "requiring on scene supervision when the individual performs a specified service or services, or permitting a specified service or services to be performed only when the individual is receiving online medical command." *Id.*

4. The regulations list several duties to be performed by a regional EMS medical director, including the responsibility to conduct hearings pursuant to Section 1003.28 of the regulations. 28 Pa.Code § 1003.28(a)(12).

5. Section 1003.28(d) of the regulations provides, in relevant part:

The regional EMS medical director shall conduct a hearing.... At the hearing, the ALS service medical director shall have the burden to proceed and offer testimony and other evidence in support of the ALS service medical director's decision.... The regional EMS medical director's written decision shall contain the regional EMS medical director's findings and conclusions.... The burden of proof is a preponderance of the evidence.
28 Pa.Code § 1003.28(d).

the regional EMS medical director's decision." *Id.* The Department's scope of review is limited "to a review and determination of whether, at the time of the assessment conducted by the ALS service medical director, the individual possessed the competence to perform all services within the scope of the individual's [MCA] for the ambulance service." *Id.* § 1003.28(f).

Dr. Rubin serves as the ALS service medical director for CTEMS. (Finding of Fact (F.F.) no. 3.) Fox was hired by CTEMS in January 2009, and on January 10, 2009, Dr. Rubin granted Fox restricted MCA for initial service preceptoring.[6] (F.F. nos. 4, 6.) Fox eventually obtained full MCA in late April or early May 2009, but shortly thereafter he was placed on medical leave for approximately six months as the result of a non-work related injury. (F.F. nos. 7–8.) On December 4, 2009, while Fox was on medical leave, he submitted his application for MCA for 2010. (F.F. no. 10.) Fox returned to work on January 20, 2010, under a rotating preceptor arrangement. (F.F. nos. 9, 11.)

On January 29, 2010, Fox responded to an ALS call that involved a woman in a serious car accident. (F.F. no. 21.) Mr. Riley (Riley) and Mr. Smaltini (Smaltini), two CTEMS paramedics, were among the other medical personnel that responded to the call along with Fox. (F.F. nos. 14–15, 21, 23.) Riley served as Fox's preceptor during this incident. (F.F. no. 25). During the course of providing care to the woman, Fox administered two doses of a drug (Versed) to the woman to facilitate intubation, in violation of statewide protocol. (F.F. nos. 29, 32, 35.) The first dose was given without receiving authorization from a medical command physician, but the second dose reportedly was authorized. *Id.* Although the parties dispute whether someone else suggested to Fox that Fox administer the first dose of Versed, the record does indicate that Riley witnessed Fox administer a drug and that no one prohibited Fox from administering either dose. (F.F. no. 30–31.)

After leaving the hospital, Fox returned to the substation and prepared a patient care report (PCR), which Riley edited. (F.F. nos. 38, 39). Fox, Riley, and Smaltini all submitted an incident report regarding the events of January 29, 2010. (F.F. nos. 40–43.) Dr. Rubin interviewed Smaltini and Riley about the incident, but did not interview Fox. (F.F. nos. 47–48.) On or about February 10, 2010, Dr. Rubin provided a comment to the PCR, stating that the "[o]verall care on th[e] case appear[ed] to be good." (F.F. no. 44.) Dr. Rubin also acknowledged that the initial dose of Versed was made in violation of protocol, but that the approval of the second dosage by Dr. Bates "gave tacit approval [of] the first dose." (*Id.*)

As a result of his investigation into the events of January 29, 2010, Dr. Rubin required that Riley take an airway course, but he did not restrict Riley's MCA due to his years of service as a paramedic. (F.F. no. 49.) Dr. Rubin initially disciplined Fox by withdrawing Fox's MCA on February 16, 2010, using the MCA form that was initiated by Fox on December 4, 2009. (F.F. no. 50; Reproduced Record (R.R.) 626a.) In filling out the form, Dr. Rubin did not provide any reasoning in support of his decision to withdraw Fox's MCA. (*Id.* at 636a–637a.) Dr. Rubin also indicated on the form that Fox had received notice of the withdrawal and a copy of the MCA form. (*Id.* at 637a.) Dr. Rubin, however,

---

6. The hearing officer stated that "[t]he purpose of a preceptor is to provide direct oversight to reverse poor judgment of a preceptee before an event jeopardizes the health and safety of a patient." (Reproduced Record (R.R.) at 636a.)

never provided the form or any formal paperwork to Fox indicating that Fox's MCA had been withdrawn; rather, Dr. Rubin assumed that CTEMS would provide a copy of the MCA form to Fox. (*Id.*) In fact, Fox was verbally notified of his MCA withdrawal by Smaltini and Mr. Hellendall, the EMS director for CTEMS, at a meeting on February 16, 2010. (*Id.; F.F.* no. 42.) Fox was also notified at that meeting that he had been fired from CTEMS. (R.R. at 637a.)

After Fox's MCA was initially withdrawn, Fox filed a "protective conditional and preliminary appeal" on March 16, 2010, to Dr. Usatch, the Montgomery County Regional EMS Medical Director. (*Id.* at 626a.) Fox took this action because, as of that point in time, he had still not yet been provided with any paperwork concerning the reason for the withdrawal of his MCA, but he did not want to risk losing his appeal rights. (*Id.*)

In March 2010, Dr. Rubin attended a Montgomery County Medical Advisory Committee (MAC) meeting, where he spoke with Dr. Usatch and another doctor concerning Fox's MCA. (F.F. no. 51.) As a result of this meeting, Dr. Rubin issued an addendum to Fox's MCA withdrawal, in which he changed the withdrawal to a restriction, and dated the form April 8, 2010. (F.F. nos. 52–53.) He also provided the following information:

> Due to [Fox's] violation of county medication protocol which directly impacted patient outcome, as well as the recommendation of the Montgomery MAC committee, [Fox's] medical command is restricted until the completion

of 100 con[tinuing education] credits and an airway course.
(F.F. no. 54.)

Fox received written notice that his MCA was restricted on April 27, 2010. (R.R. at 626a.) The restriction was to take the place of the withdrawal, but it was not meant to be retroactive, meaning that Fox's MCA had been withdrawn from February 16, 2010, to April 8, 2010, and was then restricted from April 8, 2010, until he completed the continuing education hours and airway course. (*Id.* at 639a; F.F. no. 55.) In issuing the restriction, Dr. Rubin intended to prohibit Fox from working until he completed the continuing education requirements listed. (F.F. no. 57.)

On May 7, 2010, Fox filed a conditional appeal of Dr. Rubin's decision to restrict Fox's MCA. (F.F. no. 58.) On June 9, 2010, the Montgomery County Department of Public Safety accepted the conditional appeal, which was then assigned to the Bucks County Regional Medical Director due to a conflict of interest involving Dr. Usatch.[7] (F.F. no. 59.) On August 27, 2010, Larry Loose (Loose), the Quality Assurance Coordinator for Bucks County Emergency Health Services, dismissed Fox's appeal without a hearing. (F.F. no. 60.) Based on the evidence presented to him, Loose concluded that because Fox's MCA was restricted at the time of the January 29, 2010 incident and remained restricted as of the time of the appeal, there were no grounds on which Fox could appeal. (*Id.*) Fox filed an appeal to the Department. (F.F. no. 62.)

The Department assigned the Commonwealth's EMS medical director to act as hearing officer for the matter. (R.R. at 627a.) In an undated order, the hearing

---

7. The regulations provide that "[i]f the regional EMS medical director is unable to conduct a fair hearing due to receiving prejudicial information prior to the hearing, or for any other reason, the regional EMS council shall arrange for the regional EMS medical director of another region to conduct the hearing." 28 Pa.Code § 1003.28(d).

officer concluded that the record was not adequate to support Loose's decision and that Loose was not qualified to author the decision under the Department's regulations. (*Id.* at 51a.) Thus, the hearing officer ordered that a hearing would take place concerning Fox's appeal and that Dr. Rubin would have the burden of proving the justification for his decision by a preponderance of the evidence. (*Id.* at 52a–53a.)

The hearing was eventually conducted on September 21, 2011. (*Id.* at 273a.) The only issue before the hearing officer was whether Dr. Rubin's withdrawal and subsequent restriction of Fox's MCA comported with the Department's regulations. (*Id.* at 634a.) The hearing officer first addressed whether Dr. Rubin met his burden of proof in justifying his initial withdrawal of Fox's MCA. The hearing officer determined that, in performing an investigation of the incident, Dr. Rubin never spoke with Fox directly about the events of January 29, 2010, despite interviewing Riley and Smaltini. (*Id.* at 636a–37a.) The hearing officer also noted that Dr. Rubin never afforded Fox a chance to rebut any information that was provided by anyone else who was present during the incident. (*Id.* at 637a.) Furthermore, Dr. Rubin never wrote the reasons for Fox's MCA withdrawal on the MCA form, provided Fox with appropriate notice of the withdrawal, or met with Fox to discuss why Fox's MCA was being withdrawn. (*Id.* at 636a–37a.) Thus, the hearing officer determined that a more thorough investigation should have been done after the incident to determine whether withdrawing Fox's MCA was proper. (*Id.* at 638a.)

The hearing officer also noted that Riley was supposed to be acting as preceptor for Fox during the incident, but that there was clearly a lack of supervision over Fox at that time, as Fox administered the drug without anyone questioning him or stopping him from doing so. (*Id.* at 636a, 638a.) Consequently, the hearing officer determined that there was insufficient evidence showing that Fox failed to possess the competence to perform all services within the scope of his MCA for CTEMS such that a withdrawal of Fox's MCA was warranted. (*Id.* at 637a.) Thus, the hearing officer concluded that Dr. Rubin failed to meet his burden with regard to establishing that the withdrawal of Fox's MCA was proper. (*Id.* at 637a–38a.)

Next, the hearing officer addressed whether Dr. Rubin's subsequent restriction of Fox's MCA was valid. In doing so, the hearing officer first determined that Dr. Rubin did not have the authority to restrict Fox's MCA, because Fox was not employed by CTEMS at the time the restriction was issued. (*Id.* at 639a–40a, 642a.) The hearing officer, therefore, concluded that the restriction was void on its face. (*Id.* at 640a, 642a.) The hearing officer then stated that, even if Dr. Rubin had authority to issue the restricted MCA, the imposition of the continuing education requirement was unwarranted, as it did not comply with the regulations and was arbitrary and capricious. (*Id.* at 640a–42a.)

In light of his decision, the hearing officer issued an order overturning Dr. Rubin's February 16, 2010 decision to withdraw Fox's MCA and rendering Dr. Rub in's April 8, 2010 decision to restrict Fox's MCA null and void. (*Id.* at 643 a.) The order also directed the Montgomery County Regional EMS Council to remove any references to the withdrawal and restriction of Fox's MCA from its EMS records, and it instructed that Fox would not have to report either the withdrawal or the restriction on future MCA forms or as disciplinary action to any future EMS

agency or EMS agency medical director. (*Id.*) Petitioners appealed to this Court.

On appeal,[8] Petitioners argue that the hearing officer erred in overturning the withdrawal of Fox's MCA, rendering the restriction of Fox's MCA null and void, and in declining to make findings with regard to certain disputed facts. Petitioners also argue that the hearing officer erred by conducting a de novo hearing.

■ We first address Petitioners' argument that the hearing officer erred in overturning the withdrawal of Fox's MCA. Petitioners essentially argue that the violation of statewide protocol is sufficient, in and of itself, to justify the withdrawal of Fox's MCA. Petitioners contend that violations of state regulations have been found sufficient to support the revocation of other professional licenses, and the Department has previously revoked and suspended paramedics' certifications for violations of the Act. *See Pellizzeri v. Bureau of Prof'l & Occupational Affairs*, 856 A.2d 297, 300 (Pa.Cmwlth.2004) (discussing prior disposition of case in which this Court upheld decision of State Board of Vehicle Manufacturers, Dealers and Salespersons to revoke car salesman's license based on violations of Board of Vehicles Act[9]); *Sklar v. Dep't of Health*, 798 A.2d 268, 270–72 (Pa.Cmwlth.2002) (upholding decision of Department to revoke individual's certification as EMT and paramedic and to place another individual's certification as EMT and paramedic on probationary status for violating EMS Act). Thus, Petitioners argue that, because Fox violated the Department's statewide protocol, the withdrawal of Fox's MCA should be upheld.

We agree with the hearing officer that Dr. Rubin failed to meet his burden of proof in withdrawing Fox's MCA. First, Dr. Rubin performed an inadequate investigation of the incident. Although he received and reviewed incident reports from Fox, Riley, and Smaltini, he only interviewed Smaltini and Riley about the incident. Dr. Rubin never interviewed Fox or provided Fox with an opportunity to dispute any representations Riley and Smaltini may have made to Dr. Rubin regarding the incident. The only other aspect of Dr. Rubin's investigation was his review of Fox's PCR, which Riley edited. Furthermore, Dr. Rubin failed to adequately justify the disparity between the disciplinary action taken against Riley as opposed to Fox, particularly given the fact that Riley was acting as preceptor to Fox during the incident. Although Fox did violate protocol in administering the Versed, we cannot conclude that the hearing officer erred in determining that the circumstances surrounding the January 29, 2010 incident did not warrant the withdrawal of Fox's MCA. Although this Court has previously upheld agency decisions that revoke or suspend the licenses of various professionals based on violations of the law, nothing in the Act or its accompanying regulations requires the Department to affirm an ALS service medical director's withdrawal of an individual's MCA based on a violation of protocol. Thus, because Dr. Rubin failed to present adequate evidence at the hearing to meet his burden of proof, the Department's decision to overturn Dr. Rubin's withdrawal of Fox's MCA was proper.[10]

---

8. This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

9. Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. §§ 818.1–.37.

10. Even if we were to hold that the hearing officer erred in concluding that Fox's violation of protocol was insufficient to warrant a

■ We next address Petitioners' argument that the hearing officer erred in holding that the restriction of Fox's MCA was null and void. Petitioners argue that, pursuant to Section 1003.28(d) of the regulations, only denials of a paramedic's MCA can be appealed. 28 Pa.Code § 1003.28(d). Thus, Dr. Rubin contends that the restriction is valid because the Department is prohibited from addressing the validity of the restriction of Fox's MCA.[11]

As noted earlier, the Department is the "lead agency for EMS in this Commonwealth." 35 Pa.C.S. § 8105(b). In administering the Act and implementing its accompanying regulations, "[t]he Department may investigate any person, entity or activity for compliance with the [A]ct" and its accompanying regulations. 28 Pa. Code. § 1001.5. The parties appear to agree that an individual cannot appeal an ALS service medical director's decision to restrict the individual's MCA, if the restriction complies with Section 1003.28(c)(3) of the regulations. We agree with Fox, however, that the restriction at issue in this case effectively acts as a withdrawal of Fox's MCA. Section 1003.28(c)(3) provides that, in deciding to restrict an individual's MCA, an ALS service medical director cannot "preclude the individual from performing the services specified within the scope of the individual's certification or recognition as permitted by the medical treatment protocols for the region." 28 Pa.Code § 1003.28(c)(3). The evidence of record shows that the restriction on Fox's MCA was intended to prevent Fox from working at all until the continuing education hours were completed, which is in direct violation of Section 1003.28(c)(3). Thus, the Department had the authority to determine whether Dr. Rubin's restriction of Fox's MCA was proper.

■ Next, Petitioners argue that the hearing officer erred in failing to render factual determinations regarding certain disputed facts at the hearing. First, Petitioners contend that the hearing officer should have addressed whether Fox violated various laws prohibiting the disclosure of confidential patient information, because Fox had his wife edit his incident report. Under Section 1003.28(f) of the regulations, appeals of a decision regarding an individual's MCA "shall be confined to a review and determination of whether, *at the time of the assessment conducted by the ALS service medical director*, the individual possessed the competence to per-

---

withdrawal of Fox's MCA, Petitioners do not to challenge the Department's conclusion that Dr. Rubin failed to provide Fox with proper notice of the MCA withdrawal. Although Dr. Rubin did fill out an MCA form indicating that Fox's MCA had been withdrawn, he did not provide any reasoning in support of his decision on the form. Moreover, Dr. Rubin never provided the form to Fox. These facts alone are sufficient to support the Department's decision to overturn Dr. Rubin's withdrawal of Fox's MCA.

11. To the extent that Petitioners argue that Fox does not have standing to appeal Dr. Rubin's withdrawal and subsequent restriction of Fox's MCA, we reject that argument. Although the regulations only explicitly state that a denial of an individual's MCA can be appealed, the only difference we can discern between a denial and a withdrawal of an individual's MCA is timing. A "denial" is issued if an individual's initial MCA application is rejected, and a "withdrawal" is issued when an ALS service medical director determines that an individual who already possesses MCA should no longer possess it. Moreover, the parties do not dispute that a withdrawal can be appealed, despite Section 1003.28(d)'s reference to denials only. Thus, we determine that Fox can appeal Dr. Rubin's decision to withdraw Fox's MCA. Furthermore, because Dr. Rubin's restriction of Fox's MCA effectively acted as a withdrawal, Fox has standing to appeal Dr. Rubin's decision in this regard as well.

form all services within the scope of the individual's [MCA] for the ambulance service." 28 Pa.Code § 1003.28(f) (emphasis added). We interpret this to mean that the Department is limited to reviewing the facts as they were known to the ALS service medical director at the time he rendered a decision. Dr. Rubin never included violations of patient confidentiality laws as part of the reasoning for withdrawing or restricting Fox's MCA on the MCA form or at any point before or during the hearing. Thus, the hearing officer did not err in refusing to consider whether Fox violated patient confidentiality laws in determining the validity of Dr. Rubin's withdrawal and subsequent restriction of Fox's MCA.

■ Petitioners also argue that the hearing officer was required to issue a finding of fact concerning whether someone advised Fox to administer the drug during the incident on January 29, 2010, and if not, whether Fox gave false information in his incident report in stating that someone did. Although the Department is authorized to issue its own findings of fact and conclusions of law in conducting its appellate review, it is ultimately tasked with determining whether Dr. Rubin met his burden of proof in justifying his decision to withdraw Fox's MCA. The Department determined that, regardless of whether someone told Fox to administer the drug, Riley witnessed Fox administer a drug to the woman involved in the accident and did not question Fox's actions or stop Fox from administering the drug. Consequently, the hearing officer concluded that Riley was not properly supervising Fox. Therefore, even if the hearing officer

would have found that Fox administered the drug without being advised by Riley or anyone else to do so, the hearing officer's ultimate conclusion would not have changed. Moreover, it appears from the record that, at the time of his assessment, Dr. Rubin himself did not determine whether someone else advised Fox to administer the drug. Given the Department's scope of review and the findings and conclusions the hearing officer did make, the hearing officer did not err in failing to issue a finding of fact regarding the exact conversation between the paramedics involved or whether Fox falsified information in his incident report.

■ Next, Petitioners argue that the hearing officer erred by holding a hearing in the first instance. Petitioners contend that the Department only has jurisdiction over appeals of the regional EMS medical director's decision, which is issued after the regional EMS medical director holds a required hearing under Section 1003.28(d) of the regulations. Petitioners argue that no statutory authority or regulation exists to enable the Department to hold the initial hearing instead. Thus, Petitioners argue that the hearing officer conducted the initial hearing in violation of Section 1003.28(d), and that the Department should have remanded Fox's appeal to the Bucks County Regional EMS Medical Director to hold an initial hearing.[12]

■ In reviewing a decision regarding an individual's MCA, the Department, "if deemed advisable," may "hear argument and [take] additional evidence." 28 Pa.Code § 1003.28(e). Moreover, the reg-

12. Petitioners failed to raise this issue before the hearing officer. Nevertheless, Rule 1551(a)(2) of the Pennsylvania Rules of Appellate Procedure states that this Court will address a question not raised by a petitioner below if it "involv[es] the jurisdiction of the

government unit over the subject matter of the adjudication." Because Petitioners' argument essentially challenges the Department's exercise of jurisdiction over the subject matter of Fox's appeal, we will address this issue.

ulations grant the Department the authority to make "a final decision containing findings of fact and conclusions of law which affirms, reverses, or modifies the regional EMS medical director's decision." *Id.* In this case, no hearing was held before a regional EMS medical director as required by the regulations. Instead, in violation of the regulations, the Quality Assurance Coordinator for Bucks County Emergency Health Services took evidence and issued a decision regarding Fox's appeal without a hearing. While the Department could have remanded the case to the regional EMS medical director for a hearing, nothing in the regulations requires a remand, and nothing prohibits the Department from conducting its own hearing in the first instance. In fact, the Department's ability to hear argument, take additional evidence, and issue its own findings of fact and conclusions of law in conducting its review of MCA decisions leads us to conclude that the Department can hold a hearing in the first instance with regard to reviewing MCA determinations. Thus, the Department did not err in holding a de novo hearing in this matter.[13]

Accordingly, the order of the Department is affirmed.

## ORDER

AND NOW, this 19th day of November, 2012, the order of the Department of Health is hereby AFFIRMED.

---

13. Petitioners presented two more arguments on appeal: (1) the hearing officer erred in placing the burden of proof on Dr. Rubin, and (2) Fox's appeal to the regional EMS medical director is untimely. Because Petitioners did not raise these issues below, they are waived. *See* Pa. R.A.P. 1551(a) ("No question shall be heard or considered by the court which was not raised before the government unit. . . ."). Even if Petitioners did not waive these issues, however, their arguments are without merit.

First, the hearing officer did not err in placing the burden of proof on Dr. Rubin. Section 1003.28(d) of the regulations states that "[a]t the hearing, the ALS service medical director shall have the burden to proceed and offer testimony and other evidence in support of the ALS service medical director's decision." Because the hearing officer appropriately held a hearing in the first instance, we would also find that the burden of proof was properly placed on Dr. Rubin in accordance with the regulations.

Second, Fox's appeal to the regional EMS medical director was timely. Under Section 1003.28(d) of the regulations, a decision regarding an individual's MCA must be appealed "within 14 days to the regional EMS medical director." Dr. Rubin never provided Fox with proper notice of his decision to withdraw Fox's MCA, because Dr. Rubin did not document the reasons for his decision, and he did not provide the MCA form containing his decision to Fox. Furthermore, Fox received a letter from Mr. David Brown, the Deputy Director of EMS for Montgomery County, stating that the appeal period was extended due to the unique circumstances of the case. (Supplemental Reproduced Record (S.R.R.) at 29(b)). Thus, Fox's appeal to the regional EMS medical director was timely.